Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at the time of the injury by accident.
3. Ohio Casualty Insurance Company, at all times relevant to this action, insured the risk.
4. The plaintiff suffered an injury to her back in an accident that arose out of and in the course of her employment with General Maintenance Company, Inc. on July 10, 1992.
5. In addition, the parties stipulated into evidence exhibits numbered 1 through 16 as contained in the hearing transcript.
6. It was stipulated that the only issues that the Deputy Commissioner needed to decide at the September 1, 1994 hearing pursuant to the I.C. Form 33 "Request for Hearing" filed by the plaintiff in this matter were as follows:
 A. Whether or not the plaintiff is entitled to any benefits under N.C. Gen. Stat. § 97-29 for any temporary disability in the period from July 22, 1993 to the hearing date based upon the back injury she suffered on July 10, 1992?
 B. Whether or not the plaintiff has reached MMI [maximum medical improvement] with respect to the back injury she suffered on July 10, 1992?
 C. Whether or not the plaintiff needs additional medical or other therapeutic treatment to effect a cure or give relief for the back injury she suffered on July 10, 1992?
 D. Whether or not the plaintiff is entitled to any benefits under N.C. Gen. Stat. §§ 97-29, 97-30, or 97-31 for any other permanent disability or permanent impairment based upon the back injury she suffered on July 10, 1992?
* * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional:
FINDINGS OF FACT
1. At the time of the hearing plaintiff, whose date of birth was 25 July 1952, was 42 years old. (Plaintiff testified that she was 44 years old and wrote that she was 52 years old on her Industrial Commission Form 18.) Plaintiff's native language is Spanish; and although she can read and write in Spanish, she can speak, read or write very little English. Plaintiff was born in Honduras where she completed the fifth grade in school. She has some training as a tailor. Plaintiff is married and the mother of seven children, two of whom live in the United States. While in Honduras, plaintiff did not work. Plaintiff came to the United States in December 1989 and worked in a laundry from January 1990 to June 1991. Plaintiff suffered a fall while working at the laundry. Plaintiff began to work for the defendant in July 1991. She remained with defendant for about a year, with duties that included general cleaning and vacuuming of offices. Plaintiff worked the third shift, from 6:00 p.m. to 2:00 a.m.
2. On the night of 10 July 1992, plaintiff suffered an admitted compensable injury by accident at work. The accident occurred when plaintiff slipped on a wet bathroom floor, falling on her coccyx and hitting her head slightly. Plaintiff was taken to the emergency room at Rex Hospital, where an interpreter helped her communicate with doctors. Plaintiff complained that she was unable to walk and had abdominal and low back pain. On examination, the doctor found that there was tenderness to the upper lumbar back, but the results of a straight-leg raising test were negative at 90 degrees. Plaintiff was given Tylenol #3.
3. At the time of plaintiff's injury, she was earning an average weekly wage of $197.33, producing a corresponding compensation rate of $131.56 per week.
4. Plaintiff saw Dr. Guillermo Arana, a doctor of her choice, who ordered an MRI which revealed a mild, left-central disc herniation at spinal level L4-5. Dr. Arana referred plaintiff to Dr. Lyman Smith.
5. The first examination by Dr. Smith was on 5 August 1992, and an interpreter was present to translate. Plaintiff complained of problems with her neck and lower back. The results of the straight-leg raising test were positive at 40 degrees. Dr. Smith referred plaintiff to physical therapy. Plaintiff underwent physical therapy for about three weeks.
6. While she was undergoing physical therapy, Dr. Smith referred plaintiff to Dr. Leonard D. Nelson, Jr., his partner. Dr. Nelson's examination was about five weeks after the accident. At this examination, plaintiff's primary complaint was pain in her neck, arms, and legs; with the neck pain being almost unbearable. At this examination the results of straight-leg raising tests were negative bilaterally. Plaintiff exhibited "break-through weakness" of both knees and reported a "stocking-glove" numbness of the left leg. The pain of which plaintiff reported in her arms and legs had "non-physiologic indicators." Plaintiff's complaints were not consistent with the herniated spinal disc at level L4-5, and Dr. Nelson recommended a "quick rehabilitative program."
7. The second examination by Dr. Nelson was on 26 August 1992, the last day of plaintiff's physical therapy. Plaintiff reported that she had improved with the physical therapy; but, nevertheless, continued to experience back pain. During the examination by Dr. Nelson, plaintiff complained of severe neck and lower back pain which caused her to be nauseated and vomit. Plaintiff demonstrated "quite dramatic" reactions to skin stimulation of the lower back. In a seated position the results of a straight-leg raising test were positive at 90 degrees for back pain; and in the supine position, the results of a straight-leg raising test were positive at 20 degrees on the left and 40 degrees on the right. As in the earlier examination, plaintiff demonstrated "break-through type weakness" of both legs, which is not a true weakness; and plaintiff complained of "stocking-glove" decreased sensation of both legs. Dr. Nelson was of the opinion that the herniated disc at L4-5 was probably causing plaintiff's lower back and leg pain, but gave no opinion regarding the cause of plaintiff's neck and arm pain. Plaintiff demonstrated numerous examples of pain magnification and non-physiological findings, although there was some true sciatica. Dr. Nelson was of the opinion that plaintiff was not a candidate for surgery and could try to return to work at light duty.
8. Two months after Dr. Nelson's last examination, the insurance carrier referred plaintiff to Dr. Michael Gwinn for an independent medical evaluation. At this examination, plaintiff communicated with Dr. Gwinn through an interpreter. At the first examination by Dr. Gwinn, plaintiff continued to complain of neck and lower back pain, which had improved since the accident. Plaintiff reported decreased sensations in the right leg in a stocking distribution from the knee down; whereas, her earlier primary complaint had been with pain in the left leg. The results of a straight-leg raising test were positive for back pain, but revealed no pain radiating to the legs. Extension of the arms did not cause radiating pain. Dr. Gwinn was of the opinion that plaintiff suffered from no significant neurologic compromise; that her problems were probably myofascial or soft tissue, rather than discogenic; and that her "disability" was mild. Dr. Gwinn recommended that plaintiff return to work with restrictions of not lifting more than 25 pounds, no excessive bending or twisting, and changing positions between sitting and standing.
9. In November 1992, Dr. Gwinn referred plaintiff to another session of physical therapy. At physical therapy plaintiff communicated with the physical therapist through an interpreter. At the first session of physical therapy, plaintiff complained of headaches, constant neck pain, constant pain across the lower back, constant pain radiating into the right buttocks and leg, and a rapid heart rate. Plaintiff reported that she believed her medications were causing heart problems. Plaintiff reported that her lower back pain was worse than her leg pain. A straight-leg raising test could not be performed because plaintiff reported intense pain. During a physical examination, plaintiff frequently overreacted. She cried out due to complaints of pain and jumped with palpitation over the entire spine.
10. During her second series of physical therapy treatments, plaintiff consistently rated her pain intensity at a "nine," where "zero" represented no pain and "ten" represented "an emergency". The results of an Oswestry Function Test rated plaintiff as "crippled" with a 70 percent functional impairment. Dr. Gwinn would expect a patient with these results to be "bedridden". On one occasion during physical therapy, plaintiff told the therapist that she was doing her home exercises; but when asked to demonstrate the exercises she was performing at home, plaintiff could not demonstrate them. On another occasion plaintiff told the therapist that she was performing her home exercises well; but when performing the same exercises at physical therapy, plaintiff required staff assistance in order to stretch.
11. The last regularly scheduled examination by Dr. Gwinn was on 5 February 1993. Plaintiff reported that performing activity for more than one-half hour caused pain to spread up her back and caused a headache. In Dr. Gwinn's opinion, as of 5 February 1993, plaintiff had reached maximum medical improvement, suffered no permanent partial impairment to the use of her back, and could return to work.
12. After the release by Dr. Gwinn, plaintiff's attorney made arrangements for her to return to Dr. Smith. The examination was performed on 5 May 1993. At this examination plaintiff demonstrated a normal gait. She easily got on and off the bed, and was able to walk on her heels and toes with no difficulty. The results of a straight-leg raising test were positive for both legs at 45 degrees, but produced lower back pain. Plaintiff experienced tenderness over the spinal joint at level S1 on the right, but none on the left side of the joint. Plaintiff claimed that the sensation down her left leg had "decreased completely" in a stocking-glove distribution; whereas, complaints to Dr. Gwinn earlier had been with regard to her right leg. It was Dr. Smith's opinion that plaintiff was not a candidate for surgery; and he opined that there was no further treatment that he could offer her. Plaintiff was released to return to work on an "as-needed" basis.
13. Plaintiff's attorney referred her to Dr. T. Craig Derian, an orthopedic surgeon, for an independent medical evaluation. The first examination by Dr. Derian was on 27 October 1993. Some of the complaints that plaintiff shared with Dr. Derian were consistent with her prior examinations, but some were substantially different from those which she had made to other physicians. To Dr. Derian, plaintiff reported decrease sensation down the lateral aspect of the right leg; whereas, five months earlier, plaintiff had reported to Dr. Smith a complete decrease of sensation over the left leg in a stocking distribution. Plaintiff reported that her back and leg pain were equal; whereas, plaintiff had reported earlier that her back pain had been greater. Plaintiff reported to Dr. Derian that physical therapy did not improve her condition, but rather made it worse; whereas, plaintiff earlier had reported that both sessions had improved her condition. Plaintiff reported to Dr. Derian that she had never had back or leg pain prior to her accident in July 1992; whereas, plaintiff testified that she fell while working with an earlier employer and had experienced back pain since the first fall. The results of a straight-leg raising test with Dr. Derian were positive at 20 degrees on the right, with pain radiating down the leg; and positive at 10 degrees on the left, with pain radiating to the thigh and calf; whereas, five months earlier, with Dr. Smith, the results were positive at 45 degrees for both legs, with only back pain reported.
14. At the second examination by Dr. Derian on 1 December 1993 (about a month after the first examination), plaintiff had difficulty raising from a seated to a standing position; whereas, plaintiff had been able to easily get on and off the bed at Dr. Smith's examination. Plaintiff walked with a right antalgic gait; whereas, plaintiff had previously been noted as walking with a normal gait. The results of the straight-leg raising were positive at 40 degrees on the right, but were negative on the left; whereas, the results were 20 degrees on the right and 10 degrees on the left one month earlier at Dr. Derian's prior examination.
15. As Dr. Derian opined, plaintiff's fall may have "exacerbated, activated underlying disk degeneration." In light of credible opinions of her treating physicians, and the Deputy Commissioner's first-hand evaluation, this aggravation of plaintiff's back condition was temporary, and plaintiff has failed to prove that she retains any permanent partial impairment of her back, or any loss of wage earning capacity after that period. Defendant paid plaintiff temporary total disability compensation from 11 July 1992 through 8 February 1993. Evidence produced by defendant proved that plaintiff regained the ability to earn at least some wages.
16. Seven months after the last examination by Dr. Derian, plaintiff returned to Dr. Gwinn on 27 July 1994. At this examination the results of a straight-leg raising test were negative for both legs in a seated position, positive at 20 to 30 degrees on the right in a supine position, and positive at 45 degrees on the left in a supine position. Plaintiff reported that her back pain was greater than her leg pain; whereas, she had told Dr. Derian that her back and leg pain were equal. There was a giveaway weakness in the right leg. Plaintiff reported numbness down the front and back of both arms from the shoulder to the hand, "pins and needles" sensation in the upper back, numbness in the upper back, numbness down the front and back of both legs, burning pain in her upper back, stabbing pain in the right chest and across the abdomen, and aching pain in the back of the neck and the right knee. Dr. Gwinn was of the opinion that some findings could not be explained on an organic or physiological basis.
17. Dr. Derian's opinion was that plaintiff did not exaggerate her symptoms, and there was a physical basis for her complaints. Dr. Derian's opinion was that if plaintiff "continued to make very slow progress," that "at least" a lumbar decompression at level L4-5 to remove disk material would be needed; and that she was at "increased risk" of then needing the more "risky" fusion if the first procedure was not successful. The treatise he referenced indicates a substantial possibility of further surgery to remove the metal screws and plates used in the fusion, or failed fusions. Dr. Smith and Dr. Nelson, both orthopedic surgeons, had been of the opinion that plaintiff was not a candidate for surgery. Dr. Gwinn, a "physician board" — certified specialist in physical medicine and rehabilitation and in electrodiagnostic medicine, concurred with the opinions of Dr. Smith and Dr. Nelson. In Dr. Gwinn's opinion, surgery would be appropriate if plaintiff's pain was primarily leg pain rather than only back pain, and if plaintiff's complaints followed a neurological pattern rather than being widely diffused to many parts of the body. Dr. Nelson, Dr. Gwinn, and a physical therapist all expressed the opinion that plaintiff exaggerated her symptoms and had a non-physical basis for her complaints.
18. At the hearing, defendant introduced a videotape of plaintiff taken by a private investigator. The undersigned finds limited evidentiary weight in the videotape due to its short duration and poor quality. However, the investigator had observed plaintiff prior to making the tape, and, based on the first-hand evaluation of the witnesses by the Deputy Commissioner, credibly identified the plaintiff and her activities. While briefly on the videotape, plaintiff moved without any apparent restrictions, although she bent her knee to pick up an object off the ground, which would be appropriate for a person with a back injury. The surgical treatment recommended by Dr. Derian would not address plaintiff's complaints of debilitating pain from many parts of the body, shifting from time to time, whether they are contrived or part of a myofascial pain syndrome brought on by a relatively minor trauma. While Dr. Derian felt surgery could "possibly" address such transitory pain (Depo. of Derian, p. 26), it would not treat all levels of the spine producing reported pain.
19. Surgical intervention is not necessary at this time as a result of the accident of 10 July 1992 to effect a cure, to provide relief, or to reduce the time during which plaintiff is unable to be gainfully employed. Further medical treatment by Dr. Gwinn would be appropriate, rather than the treatment recommended by Dr. Derian. Dr. Gwinn's findings and opinions are more consistent with those of other physicians.
20. On 5 February 1993 plaintiff had reached maximum medical improvement and was capable of returning to her regular job with defendant-employer. Dr. Gwinn was asked at his deposition whether he would reconsider his earlier opinion regarding the plaintiff's maximum medical improvement, and Dr. Gwinn responded that there was a worsening of plaintiff's condition "based on what she's [plaintiff] telling me." Dr. Gwinn did not reconsider his opinion regarding maximum medical improvement.
21. Sometime prior to 29 April 1993, plaintiff returned to work. An elderly woman, weighing 200 pounds, broke her leg and needed assistance. The woman's son hired plaintiff to help his mother. Plaintiff testified that she was initially paid $100.00 per week in cash, and was paid that twice; but, thereafter she declined payment and helped the woman as a favor. By 29 April 1993, plaintiff had regained the capacity to earn not less than $100.00 per week.
22. Plaintiff testified that she was severely restricted in her physical activity. She testified that she could not vacuum, do laundry, make a bed, or rake leaves. She said that she limited her driving to short distances, that she limps on occasion, and that she climbs stairs with difficulty. Plaintiff was raking leaves on defendant's videotape. Plaintiff testified that she was able to dust and help care for a 200-pound woman who used a walker. In light of the hearing Deputy's evaluation of the witnesses and consistent evidence, the plaintiff's claims of pain and disability are not deemed factual or reliable.
* * * * * * * *
Based upon the foregoing findings of fact, the Full Commission makes the following additional:
CONCLUSIONS OF LAW
1. As a result of the injury by accident of 10 July 1992, plaintiff is entitled to temporary total disability compensation from 11 July 1992 through 5 February 1993. Plaintiff thereafter regained the ability to earn some wages, and failed to prove a continuing incapacity to earn wages. Brown v. SN Communications, Inc., 124 N.C. App. ___, 477 S.E.2d 198, 202 (1996) (Filed 5 November 1966). As said amount has already been paid, plaintiff is not entitled to any further temporary total disability compensation. N.C. Gen. Stat. §§ 97-29; 97-2 (9).
2. As result of the injury by accident of 10 July 1992, plaintiff is not entitled to permanent partial disability compensation. N.C. Gen. Stat. § 97-31.
3. Plaintiff is entitled to the payment of all medical compensation expenses incurred, or to be incurred, to effect a cure, to provide relief, or to lessen any period of disability, as a result of the injury by accident of 10 July 1992. The initial examination provided by Dr. Derian should be treated as a second independent medical evaluation by a doctor of plaintiff's choice, pursuant to N.C. Gen. Stat. § 97-27. N.C. Gen. Stat. § 97-25.
* * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Plaintiff's claim for additional compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Defendants shall pay all medical compensation expenses incurred, or to be incurred, as a result of the injury by accident of 10 July 1992, when the bills have been submitted to the carrier and approved in accordance with the rules of the Commission. Defendant shall pay Dr. T. Craig Derian for his second opinion examination of plaintiff.
3. Each side shall pay its own costs, except that defendant shall pay an expert witness fee in the amount of $800.00 to Dr. Michael Gwinn and $500.00 to Dr. T. Craig Derian.
 S/ _________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
JRW:md 1/30/97